In re Charles GOLDSTEIN, Debtor.

Charles A. GOLDSTEIN, Plaintiff,

v.

MARINE MIDLAND BANK, N.A. and
Williamson and Williamson, P.C.,
Defendants.

Bankruptcy No. 95–10656.
Adversary No. 96–1030.

United States Bankruptcy Court,
D. Maine.

Sept. 26, 1996.

Jennie Clegg, Pierce, Atwood, Scribner, Allen & Lancaster, Portland, ME, for Debtor.

Gary M. Growe, Trustee, Bangor, ME.

## MEMORANDUM OF DECISION

JAMES B. HAINES, Jr., Bankruptcy Judge.

■ The defendants' pending motion to dismiss challenges this court's subject matter jurisdiction over three counts of the plaintiff/debtor's complaint. Although the defendants acknowledge jurisdiction over alleged violations of the Bankruptcy Code's automatic stay (Count I) and discharge injunction (Count II), they contend jurisdiction does not exist over those counts alleging post-petition violations of the Fair Debt Collections Practices Act (F.D.C.P.A.) (Count III), seeking costs and fees under the statute authorizing "court[s] of the United States" to sanction those who "unreasonably and vexatiously" multiply proceedings (28 U.S.C. § 1927) (Count V), and seeking damages under state tort law (Count VI).[1] Although the F.D.C.P.A. and tort claims arise from the same facts that underlie allegations that the defendants breached the automatic stay and the discharge injunction, I conclude that they

---

1. Goldstein's separate claim for punitive damages (Count III) need not be discussed independently since punitive damages are potentially available for a violation of the automatic stay as well as for a violation of the discharge injunction. 11 U.S.C. § 362(h) (recovery of punitive damages is available in appropriate circumstances for a wilful violation of the automatic stay); *Owen v. Treadway (In re Owen),* 169 B.R. 261 (Bankr.D.Me.1994) (denying punitive damages for defendant's violation of the discharge injunction because plaintiff/debtor failed to prove "malevolent intent").

must be dismissed because this court is without subject matter jurisdiction over them. The § 1927 claim, lodged only against defendant Williamson & Williamson, P.C., will be dismissed on other grounds.[2]

## DISCUSSION

### 1. The Dismissal Standard.

I will consider the defendants' motion to dismiss under the following standard:

> In ruling upon the motion to dismiss, "whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the ... complaint should be construed favorably to the pleader." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Cioffi v. Old Stone Bank (In re C.A.C. Jewelry, Inc.),* 124 B.R. 419, 421 n. 3 (Bankr.D.R.I.1991); *Realty Data, Inc. v. Lanciaux (In re Lanciaux),* 76 B.R. 254, 256 (Bankr.D.R.I. 1987). *See Watterson v. Page,* 987 F.2d 1, 3 (1st Cir.1993) ("In considering a motion to dismiss, a court must take the allegations in the complaint as true and must make all reasonable inferences in favor of the plaintiffs.") (citing *Monahan v. Dorchester Counseling Ctr., Inc.,* 961 F.2d 987, 988 (1st Cir.1992)). *See* 5A Wright & Miller, *Federal Practice & Procedure:* Civil 2d §§ 1350, 1363 (1990).

*Boyajian v. DeLuca (In re Remington Dev. Group, Inc.),* 180 B.R. 365, 367 (Bankr.D.R.I. 1995); *see Bohrmann v. Maine Yankee Atomic Power Co.,* 926 F.Supp. 211, 216 (D.Me.1996). Only if the complaint presents no set of facts justifying recovery will a motion to dismiss be granted. *The Dartmouth Review v. Dartmouth College,* 889 F.2d 13, 16 (1st Cir.1989).

### 2. Procedural Background and Jurisdictional Facts.

Taking the complaint's allegations as true, the events critical to my inquiry are as follows:

---

**2.** This memorandum of decision sets forth conclusions of law in accordance with Fed.R.Civ.P. 52 and Fed.R.Bankr.P. 7052. The facts are not disputed.

Charles A. Goldstein filed a voluntary Chapter 7 petition on August 29, 1995. His discharge was entered on January 18, 1996. On May 28, 1996, he filed this adversary proceeding against Marine Midland Bank, N.A., and Williamson & Williamson, P.C., collection attorneys retained by Marine Midland.

Goldstein owed money to Marine Midland for credit card debt when he filed his petition. He has not used the credit card since. Notwithstanding notice of his bankruptcy case, Marine Midland billed Goldstein for prepetition debt in October and November 1995. Thereafter, notwithstanding Goldstein's counsel's specific advice of the Chapter 7 petition, Marine Midland continued to send Goldstein bills. On September 25 and November 30, 1995, Marine Midland obtained credit reports providing additional notice ·of Goldstein's Chapter 7 filing. Marine Midland or its agents also made post-petition telephonic payment demands.

The bank's collection attempts persisted beyond Goldstein's discharge. Marine Midland's agent or employee phoned Goldstein in February 1996. On March 6, 1996, Goldstein's counsel wrote again to Marine Midland, by telecopy and certified mail, to advise it of the bankruptcy and discharge. Thereafter, Marine Midland billed Goldstein's former spouse, although she was not contractually liable on the debt. In March 1996 Marine Midland or its agent called Goldstein's home attempting to reach his former spouse regarding the credit card debt.

On May 3, 1996, Williamson & Williamson sent a demand on Marine Midland's behalf, referencing the prepetition debt and advising Goldstein that, if a payment agreement was not reached within 30 days, "we intend to commence litigation against you as soon as it is practical for us to do so."

### 3. Bankruptcy Court Jurisdiction.

Congress defined the scope of bankruptcy jurisdiction in 28 U.S.C. § 1334 and authorized the district courts to delegate that jur-

---

Unless otherwise indicated, all references to statutory sections are to sections of the Bankruptcy Reform Act of 1978 ("Bankruptcy Code" or "Code"), as amended, 11 U.S.C. § 101 *et seq.*

isdiction to the bankruptcy courts in 28 U.S.C. § 157(a).

Section 1334 provides that district courts shall have "original and exclusive" jurisdiction of "all cases under title 11," § 1334(a), and "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." § 1334(b). The district courts may refer bankruptcy jurisdiction to bankruptcy courts: "Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." § 157(a).

*In re Remington Dev. Group, Inc.,* 180 B.R. at 368; *see also Celotex Corp. v. Edwards,* — U.S. —, —, 115 S.Ct. 1493, 1498, 131 L.Ed.2d 403 (1995); *Paris Mfg. Corp. v. Ace Hardware Corp. (In re Paris Indus. Corp.),* 132 B.R. 504, 507 (D.Me.1991); 1 William L. Norton, Jr., *Norton Bankruptcy Law and Practice 2d* § 4:38 at 4–226 (1994) [hereinafter *"Norton"*]; 1 *Collier on Bankruptcy* ¶ 3.01[c][ii] at 3–25 (Lawrence P. King ed., 15th ed. 1996) [hereinafter *"Collier"*]; 1 *Chapter 11 Theory and Practice* § 4.13 (James F. Queenan, Jr. et al. eds., 1994) [hereinafter *"Queenan"*]. By its August 1, 1984, Order of Reference, the U.S. District Court for the District of Maine has executed completely its § 157(a) reference authority.

█ Proceedings "arise under" title 11 if they involve a "cause of action created or determined by a statutory provision of the Bankruptcy Code." *Norton,* § 4:38 at 4–230; *see Wood v. Wood (In re Wood),* 825 F.2d 90, 96–97 (5th Cir.1987); *see also Maitland v. Mitchell (In re Harris Pine Mills),* 44 F.3d 1431, 1435 (9th Cir.1995), *cert. denied,* — U.S. —, 115 S.Ct. 2555, 132 L.Ed.2d 809 (1995); *Zerand–Bernal Group, Inc. v. Cox,* 23 F.3d 159, 162 (7th Cir.1994); *Gray v. Polar Molecular Corp. (In re Polar Molecular Corp.),* 195 B.R. 548 (Bankr.D.Mass. 1996); *see generally Collier,* ¶ 3.01[c][iii] at 3–26; *Queenan,* § 4.14.

█ "Proceedings 'arising in' a bankruptcy case 'are those that are not based on any right expressly created by title 11, but never-

theless, would have no existence outside of the bankruptcy.'" *Norton,* § 4:30 at 4–231 (*quoting In re Wood,* 825 F.2d at 96–97); *see also In re Harris Pine Mills,* 44 F.3d at 1435; *Zerand–Bernal Group, Inc.,* 23 F.3d at 162; *see generally Collier,* ¶ 3.01[c][v] at·3–32; *Queenan,* § 4:15.

The final, and most expansive, component of § 1334(b) is "related-to" jurisdiction. As recently explained:

Generally speaking, related-to bankruptcy jurisdiction extends to matters "concerned only with State law issues that did not arise in the core bankruptcy function of adjusting debtor-creditor rights." *In re Arnold Print Works, Inc.,* 815 F.2d [165] at 167 [ (1st Cir.1987) ]. *See In re El San Juan Hotel Corp.,* 149 B.R. 263, 270 (D.P.R.1992) (describing related-to cases as " 'those civil proceedings that, in the absence of bankruptcy, could have been brought in a district court or state court.' " (citations omitted). *See generally* 1 *Norton* § 4:39.

To define the reach of related-to jurisdiction, the bankruptcy court ... utilizes the generally-adopted standard set out by the Third Circuit:

[T]he test for determining whether a civil proceeding is related to bankruptcy is whether *the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy* .... Thus, the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

*Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir.1984) (emphasis in original). *See In re C.A.C. Jewelry, Inc.,* 124 B.R. at 422; *In re Lanciaux,* 76 B.R. at 256. *See also In re Parque Forestal, Inc.,* 949 F.2d [504] at 509 [ (1st Cir.1991) ] (remarking that *Pacor* provides a "broad construction" of related-to jurisdiction, without adopting

the test for all cases); *In re G.S.F. Corp.,* 938 F.2d [1467] at 1475 [ (1st Cir.1991) ] (recognizing *Pacor* as the "usual articulation" of the related-to jurisdiction test); *Flores Rivera v. Telemundo Group,* 133 B.R. 674, 675 (D.P.R.1991) (noting that most circuits have adopted the *Pacor* test); *Philippe v. Shape, Inc.,* 103 B.R. 355, 356 (D.Me.1989) (applying *Pacor* test); *In re Videocart, Inc.,* 165 B.R. 740 (Bankr. D.Mass.1994) (applying *Pacor* test); *In re Summit Airlines, Inc.,* 160 B.R. [911] at 922 [ (Bankr.E.D.Pa.1993) ] (survey of circuits applying *Pacor* ). *But see In re Turner,* 724 F.2d 338, 341 (2d Cir.1983) (requiring a "significant connection" to the bankruptcy estate); *In re Pettibone Corp.,* 135 B.R. 847, 849–50 (Bankr.N.D.Ill.1992) (describing a narrower Seventh Circuit test requiring that resolution of the case "affects the amount of property available for distribution or the allocation of property among the creditors.").

*In re Remington Dev. Group, Inc.,* 180 B.R. at 368–69 (footnote omitted); *see Community Bank of Homestead v. Boone (In re Boone),* 52 F.3d 958, 960 (11th Cir.1995); *see also Celotex,* —— U.S. at —— n. 5, ——, 115 S.Ct. at 1498 n. 5, 1499 (citing *Pacor* with approval).

4. *Applying the Jurisdictional Standard to Goldstein's F.D.C.P.A. and Tort Claims.*

 Simply stated, Goldstein's F.D.C.P.A. and tort claims do not "arise under" title 11. They are causes of action neither created nor determined by Bankruptcy Code provisions. *In re Harris Pine Mills,* 44 F.3d at 1435. Neither do they "arise in" Goldstein's bankruptcy case. That is to say, neither cause of action is based upon rights that cannot be pursued outside the bankruptcy context. *Id.*[3]

 Moreover, Goldstein's F.D.C.P.A. and tort claims are not within this court's "related-to" bankruptcy jurisdiction. This is so under even the most expansive definition of related-to jurisdiction. Win, lose, or draw, the outcome of Goldstein's F.D.C.P.A. and tort claims cannot "conceivably have any effect on the estate being administered in bankruptcy." *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir.1984). This is a Chapter 7 case. The F.D.C.P.A. and tort allegations involve post-petition conduct. Even if Goldstein were successfully to prosecute them, the recovery would be his, not his estate's. *See* 11 U.S.C. § 541(a). The claims hold no potential to impact in any way the "handling and administration of the bankrupt estate." *Pacor, Inc.,* 743 F.2d at 994.

The authorities Goldstein invokes provide him no help. In contrast to his F.D.C.P.A. and tort claims, the cases he cites address claims that did have the potential to impact the estate. *In re Paris Indus. Corp.,* 132 B.R at 507–08; *Philippe v. Shape, Inc.,* 103 B.R. 355 (D.Me.1989). In *Philippe,* a suit against the corporate debtor's officers had a potential effect on the estate because the debtor's bylaws provided for "unconditional" indemnification of its officers, directors and employees. *Philippe,* 103 B.R. at 358. In *Paris,* the district court held that a third party's product liability action against the postpetition purchaser of the debtor's assets affected the estate because the bankruptcy court's prior order directly covered the controversy in question and because the suit potentially subjected the debtor to the purchaser's rescission of the sale.[4]

 Although Goldstein does not invoke 28 U.S.C. § 1367 directly, his jurisdictional argument boils down to an assertion that this court should exercise "supplemental jurisdiction" over his F.D.C.P.A. and tort claims. Since the bankruptcy court has jurisdiction

---

3. In what may be an attempt to invoke "arising in" jurisdiction, Goldstein points out that his bankruptcy case is "still open." Plaintiff's Objection, Court Doc. No. 16, at 6. But "arising in" limitation on bankruptcy jurisdiction has substantive, rather than merely temporal, content. *See Norton,* § 4:38 at 4–231 to 234.

4. *Paris* arguably presented a controversy "arising under" title 11 or "arising in" the bankruptcy case, although the district court did not so characterize it. The case presented a challenge to the effectiveness of a previously issued, final order of the bankruptcy court authorizing a sale of estate assets free and clear of liens and claims pursuant to § 363(f). *In re Paris Indus. Corp.,* 132 B.R. at 506.

**6**

over the § 362(h) and § 524(a) claims, and since the F.D.C.P.A. and tort claims arise from the same "transaction," involve the same "operative facts," he argues that it can, and should, hear them. The argument has logical appeal. It would be convenient and economical to resolve all claims in one forum. But, "judicial economy itself does not justify jurisdiction." *In re Boone,* 52 F.3d at 961 (citing *Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.),* 910 F.2d 784, 789 (11th Cir. 1990)).

■ Under § 1367,[5] the district court may exercise "supplemental jurisdiction" over non-federal claims if they are so related to claims over which the court has jurisdiction so as to comprise a single constitutional "case or controversy" within the meaning of Article III. *See* 13B Charles A. Wright et al., *Federal Practice and Procedure: Jurisdiction 2d* § 3567.1, at 23–24 (Supp.1996); *see also United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). But the question is whether this broad supplemental jurisdiction reposes in the bankruptcy courts, as well.

■ We start from the premise that "[b]ankruptcy courts are courts of limited jurisdiction, with their scope defined by stat-

ute." *FDIC v. Majestic Energy Corp. (In re Majestic Energy Corp.),* 835 F.2d 87, 89 (5th Cir.1988) (discussing the interrelation of 28 U.S.C. §§ 157 and 1334).

Examining the statutory sections that establish bankruptcy jurisdiction (§ 1334) and permit its referral from the district court to the bankruptcy court (§ 157(a)), the limitations that preclude the bankruptcy court's exercise of supplemental jurisdiction become apparent. Section 1334(a) confers upon the *district* court "original and exclusive jurisdiction of all cases under title 11." Section 1334(b) adds that "the *district* courts shall have original, but no exclusive jurisdiction of all civil proceedings *arising under* title 11, or *arising in* or *related to* cases under title 11." (emphasis supplied). Section 157(a) enables the district court's bankruptcy jurisdiction to be delegated to the bankruptcy court through an order of reference. *See Jones v. Mayhone (In re Mayhone),* 165 B.R. 264, 266 (Bankr.W.D.Ark.1994). In addition to authorizing such a reference, § 157(a) expressly limits the reference's permissible extent: "Each district court may provide that any or all cases under title 11 and any or all proceedings *arising under* title 11 or *arising in* or *related to* a

---

5. § 1367. Supplemental jurisdiction

　(a) Except as provided in subsection (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

　(b) In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, the district courts shall not have supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure, or over claims by persons proposed to be joined as plaintiffs under Rule 19 of such rules, or seeking to intervene as plaintiffs under Rule 24 of such rules, when ·exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332.

　· (c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—

　　(1) the claim raises a novel or complex issue of State law,

　　(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

　　(3) the district court has dismissed all claims over which it has original jurisdiction, or

　　(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

　(d) The period of limitations for any claim asserted under subsection (a), and for any other claim in the same action that is voluntarily dismissed at the same time as or after the dismissal of the claim under subsection (a), shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.

　(e) As used in this section, the term "State" includes the District of Columbia, the Commonwealth of Puerto Rico, and any territory or possession of the United States.

28 U.S.C. § 1367 (1993).

case under title 11 shall be referred to the bankruptcy judges for the district." (Emphasis supplied). Nowhere does § 157(a) authorize the district court to delegate more than "arising under," "arising in" and "related to" bankruptcy jurisdiction to the bankruptcy court. *See In re Pettibone Corp.,* 135 B.R. at 851 (noting the irrelevance of discussing whether § 157 " 'core' jurisdiction" exists where § 1334 jurisdiction is lacking because "§ 157 is not an independent source of jurisdiction.") (citing *In re Wood,* 825 F.2d at 94–97; *In re Spaulding . & Co.,* 131 B.R. [84] at 90 [ (N.D.Ill.1990) ] ).

Section 1367's supplemental jurisdiction grant extends district court jurisdiction virtually to the limits of Article III. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966) (explaining that Article III contemplates "judicial *power*" over pendent state claims only where they are part of "but one constitutional 'case.' "); *Massachusetts v. Mosbacher,* 785 F.Supp. 230, 238 (D.Mass.1992) (recognizing that § 1367 grants the district court jurisdiction to the full extent that Article III allows); 13B *Wright & Miller:* Jurisdiction and Related Matters 2d § 3567.3 at 46 (Supp.1994) (same). It would be anomalous to conclude that the bankruptcy court, which obtains jurisdiction by circumscribed statutory reference from the district court, may exercise § 1367 supplemental jurisdiction at the outer limits of Article III. This § 157(a) reference is the vessel through which jurisdiction may be passed to the bankruptcy courts. Congress constructed that vessel with precise dimensions and limited capacity. Supplemental jurisdiction will not fit within it. To conclude otherwise is asking to run another [*Northern Pipeline Construction Co. v.*] *Marathon [Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) ].

*In re Remington Dev. Group, Inc.,* 180 B.R. at 372–73; *see also Cadle Co. v. Lindsey (In re Walker),* 51 F.3d 562, 572–73 (5th Cir. 1995); *Halvajian v. Bank of New York, N.A.,* 191 B.R. 56, 58 (D.N.J.1995); *Romar Int'l Georgia, Inc. v. Southtrust Bank (In re Romar Int'l Georgia, Inc.),* 198 B.R. 401, 406–07 (Bankr.M.D.Ga.1996) (citing cases).[6] Thus, I may not entertain Goldstein's F.D.C.P.A. and tort claims under supplementary jurisdiction's mantle. He may pursue them elsewhere.

5. *Goldstein's 28 U.S.C. § 1927 Claim Against Defendant Williamson & Williamson*

Title 28 U.S.C. § 1927 provides:

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

Goldstein alleges that but for the "unreasonable and vexatious actions" of Williamson & Williamson, namely, "threatening litigation and otherwise seeking to collect the Pre-Petition Debt," he would not have been forced to file this adversary proceeding. Thus, Goldstein argues, Williamson & Williamson has unreasonably and vexatiously

**6.** In *Davis v. Courington (In re Davis),* 177 B.R. 907 (9th Cir. BAP 1995), the Ninth Circuit's Bankruptcy Appellate Panel held that the bankruptcy court had supplemental jurisdiction over debtor's prepetition state law cause of action against a creditor bank because there was a common nucleus of facts between the *prepetition* state action and the bank's *postpetition* breach of the automatic stay. The underlying Chapter 13 case had been dismissed, but the panel held that the bankruptcy court properly could exercise jurisdiction over an action for violation of the stay because the action would serve to redress intentionally wrongful conduct. *Id.* at 912. The court did not address how seemingly distinct prepetition and postpetition conduct arose from a common factual nucleus. Moreover, even assuming that there existed a factual nucleus sufficient for a *district* court to exercise supplemental jurisdiction, the appellate panel devoted no meaningful attention to the question whether *bankruptcy* courts may exercise such jurisdiction as well. Finally, I also note that although the debtor's state law claim had related to the debtor's Chapter 13 case when it was commenced, because the cause of action was an asset of the Chapter 13 estate, 11 U.S.C. §§ 541(a), 1306(a), its jurisdictional nexus to bankruptcy became problematic after the Chapter 13 was dismissed.

multiplied the proceedings in his bankruptcy case.

Following my review of the defendants' motion to dismiss, in which they argue that this court has no jurisdiction over a § 1927 claim because it is not a "court of the United States," [7] I *sua sponte* questioned whether Goldstein's complaint even states a claim under § 1927 and invited the parties to brief the issue. I now conclude that the allegations set forth in Count V, read in the light most favorable to Goldstein, are insufficient to state a claim under § 1927. Count V will be dismissed pursuant to Fed.R.Civ.P. 12(b)(6).

▇▇ Section 1927 was intended by Congress to "deter unnecessary delays in litigation." H.R.Conf.Rep. No. 1234, 96th Cong., 2d Sess. 8, *reprinted in* 1980 U.S.C.C.A.N. 2716, 2782. It " 'looks to unreasonable and vexatious multiplications of proceedings; and it imposes an obligation on attorneys throughout the entire litigation to avoid dilatory tactics.' " *In re 72nd Street Realty Assoc.*, 185 B.R. 460, 475 (Bankr.S.D.N.Y. 1995) (*quoting United States v. International Bhd. of Teamsters*, 948 F.2d 1338, 1339 (2d Cir.1991)).

▇▇ Goldstein complains that Williamson & Williamson's letter warning that suit might be instituted to collect his prepetition credit card debt caused a multiplication of the proceedings in his bankruptcy case because it triggered his filing of this adversary proceeding. There are two problems with Goldstein's argument.

▇▇ First, the Williamson & Williamson letter, which arguably gives rise to a cause of action pursuant to § 524(a)(2) as a violation of the Code's discharge injunction, was not sent in furtherance of, or for that matter even in the course of, litigation pending before this court. *See Citizens Bank & Trust Co. v. Case (In re Case)*, 937 F.2d 1014, 1023 (5th Cir.1991) (power of court to sanction attorneys pursuant to § 1927 limited to "actions which multiply the proceedings in the case before the court"). Neither my research nor anything offered by the parties has revealed one case in which sanctions pursuant to § 1927 were imposed in circumstances, such as these, where the complained-of conduct did not occur within litigation pending before the court that imposed the sanction. The reason is clear. There can be no delay in litigation when there is not yet even litigation. *See In re Keegan Management Co. Sec. Litig.*, 78 F.3d 431, 435 (9th Cir.1996) (because § 1927 speaks to the multiplication of proceedings, it applies only to "unnecessary filings and tactics once a lawsuit has begun"); *Overnite Transportation Co. v. Chicago Industrial Tire Co.*, 697 F.2d 789, 794 (7th Cir.1983) ("a review of the legislative history surrounding § 1927 reveals the congressional intent to impose sanctions only upon those attorneys who needlessly delay *ongoing* litigation").

▇▇ Second, Goldstein's complaint overlooks the fact that, although it is true that Williamson & Williamson comprises "attorney[s] ... admitted to conduct cases," in the context of *this* adversary proceeding they are not the attorneys to whom § 1927 speaks. They are, rather, a party defendant—the client of counsel representing them here. *See Hudson Motors Partnership v. Crest Leasing Enter.*, 845 F.Supp. 969, 978 (E.D.N.Y.1994) (awards pursuant to § 1927 are not made against clients).[8]

**7.** The authorities are split regarding whether bankruptcy courts are "court[s] of the United States" and therefore may invoke the sanctioning powers of § 1927. *Compare Baker v. Latham Sparrowbush Assoc. (In re Cohoes Industrial Terminal, Inc.)*, 931 F.2d 222, 230 (2d Cir.1991) (dicta) (bankruptcy court may impose sanctions pursuant to § 1927); *Volpert v. Ellis (In re Volpert)*, 177 B.R. 81 (Bankr.N.D.Ill.1995) (bankruptcy court has authority to impose sanctions pursuant to § 1927 as arm of district court), *aff'd*, 186 B.R. 240 (N.D.Ill.1995); and *Knepper v. Skekloff*, 154 B.R. 75, 79 (N.D.Ind.1993) (bankruptcy court has jurisdiction to impose section 1927 sanctions) *with Jones v. Bank of Santa Fe (In re Courtesy Inns, Ltd.)*, 40 F.3d 1084 (10th Cir.1994) (bankruptcy courts "not within the contemplation of § 1927"); *In re Regensteiner Printing Co. v. Graphic Color Corp.*, 142 B.R. 815, 818 (N.D.Ill.1992) (vacating sanctions imposed by bankruptcy court because not "court of the United States").

My disposition of the § 1927 count, however, renders resolution of that issue unnecessary.

**8.** Today's result does not leave Goldstein without redress for Williamson and Williamson's alleged-

## CONCLUSION

For the reasons set forth above, counts III and VI of the complaint will be dismissed for lack of subject matter jurisdiction. Count V will be dismissed for failure to state a claim. A separate order will enter forthwith.

ly wrongful conduct. If the law firm violated the Code's discharge injunction, he is entitled to recover injunctive relief, damages, and attorneys' fees.

"A willful violation of the permanent injunction [imposed by discharge] may, in appropriate circumstances, lead to an award of sanctions or a specific injunction. Further, attorneys' fees may be assessed against a creditor which willfully disobeys the discharge injunction." 3 *Norton* § 48:2, at 48–5 to 48–6; *see also In re Owen,* 169 B.R. at 263 (punitive damages available for violation of § 524 discharge injunction upon showing of malevolent intent).